UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

MYUN-UK CHOI, JIN-HO JUNG, SUNG-HUN JUNG, SUNG-HEE LEE, and KYUNG SUB LEE, Individually and on Behalf of All Others Similarly Situated,

                        Plaintiffs

      -against-

TOWER RESEARCH CAPITAL LLC and MARK GORTON,

                        Defendants.

---------------------------------------------------------x

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2|16|17
```

14 CV 9912 (KMW)

**OPINION AND ORDER**

KIMBA M. WOOD, District Judge:

Plaintiffs are members of a putative class comprised of parties who transacted in certain Korean futures contracts on a Korean securities exchange (the "KRX") in 2012. Plaintiffs allege that Tower Research Capital LLC ("Tower") and its CEO, Mark Gorton (collectively, "Defendants"), used fictitious trades and other deceptive techniques to manipulate the prices at which these futures contracts traded on the Chicago Mercantile Exchange Globex Platform ("CME Globex"), a trading platform used by the Korean exchange. Plaintiffs assert that this conduct violates the Commodity Exchange Act ("CEA"), 7 U.S.C. §§ 1, et seq., as well as state law.

Defendants first moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). On February 24, 2016, this Court granted Defendants' motion to dismiss, giving Plaintiffs leave to file an amended complaint within thirty days. ("Opinion" [Doc. No. 41]). Plaintiffs filed their First Amended Complaint ("FAC") on March 28, 2016. (Doc. No. 43).

1

Defendants have again moved to dismiss Plaintiffs' First Amended Complaint. (Doc. No. 48). For the reasons set forth below, the Court GRANTS Defendants' Motion. Plaintiffs' First Amended Complaint is dismissed with prejudice.

### I.  BACKGROUND

Plaintiffs first filed their class action complaint on December 16, 2014, asserting violations of the CEA §§ 6(c), 6(d), 9(a), and 22(a), 7 U.S.C. §§ 9, 12b, 13(a), and 25(a), as well as state law unjust enrichment claims. The following facts are taken from Plaintiff's Amended Complaint and are assumed to be true for the purposes of Defendant's Motion to Dismiss. *See Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 322 (2007); *see also Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) ("When considering a motion to dismiss ... for failure to state a cause of action, a court must accept as true all material factual allegations in the complaint.").

Plaintiffs allege that Defendants "manipulate[d] the price of KOSPI 200 futures contracts traded on the CME Globex for their own profit" by misleading other traders about the prevailing price and number of contracts available. (FAC ¶ 2). The KOSPI 200 is an index for Korean stocks, similar to the Dow Jones Industrial Average or the S&P 500. *Id.* ¶ 15. KOSPI 200 futures contracts are offered by the KRX, a derivatives securities exchange headquartered in Busan, South Korea. *Id.* While KOSPI 200 futures contracts are normally traded on the KRX itself, they are also listed and traded on the CME Globex—an electronic trading platform affiliated with the Chicago Mercantile Exchange ("CME")—during the night market when regular KRX systems are closed. *Id.* The KRX night market runs from 5:00 p.m. to 6:00 a.m. Seoul time (2:00 a.m. to 3:00 p.m. Chicago time). *Id.* ¶ 18. During the KRX night market, KOSPI 200 orders are matched on the CME Globex, at which point the parties enter into a binding agreement to trade a KOSPI 200

2

futures contract. *Id.* About 10 percent of KOSPI 200 futures contracts are traded on the CME Globex during the night market. (Pls. Opp'n. at 3).

Defendants allegedly manipulated the price of the futures contracts by entering large-volume orders either to buy or sell KOSPI 200 futures contracts without intending for these orders to be matched by other users. *Id.* ¶ 2, 29. Plaintiffs continue to allege that Defendants created "hundreds and hundreds" of these fictitious buy and sell orders, and, over the course of the year, earned approximately $14.1 million through the use of these "spoofing" tactics. *Id.* ¶¶ 2, 4.

In order for the Defendants to be held liable for Plaintiffs' claims, their actions must have been subject to United States law. As noted in this Court's first Opinion and Order, *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), lays out a framework for assessing the extraterritorial applicability of the CEA. Plaintiffs establish CEA jurisdiction in United States courts under *Morrison* in one of two ways. The alleged illegal transactions must have either (1) taken place on a registered United States exchange, or (2) have been made in the United States. 561 U.S. 247 (2010). The Second Circuit elaborated on *Morrison's* second prong in *Absolute Activist Value Master Fund Ltd. v. Ficeto,* in which it found that a transaction is "made" in the United States when plaintiffs "allege facts indicating that irrevocable liability was incurred, or that title was transferred, within the United States." 677 F.3d 60, 62 (2d Cir. 2012); *see also Starshinova v. Batratchenko*, 931 F. Supp. 2d 478, 486 (S.D.N.Y. 2013) (Wood, J.) (applying this standard to a claim brought under the CEA). From the outset, the parties have disputed (1) whether the KOSPI 200 futures trades took place on a U.S. exchange or a Korean exchange, and (2) whether the alleged transactions took place in the United States or in South Korea.

This Court granted Defendants' first motion to dismiss after finding that Plaintiffs could not satisfy either prong of *Morrison*. Plaintiffs could not prove either that the trades in question

took place on an American exchange, or that the alleged transactions occurred within the United States. (Op. at 9). The Court also dismissed Plaintiffs' state law unjust enrichment claims after finding that Plaintiffs failed to show the direct relationship with Defendants necessary to support the claim. *Id.* at 11.

## II.  DISCUSSION

Plaintiffs have now amended their complaint and ask the Court to reconsider their claims. Plaintiffs maintain that they have satisfied both prongs of the *Morrison* test, and that their Amended Complaint sufficiently pleads a state law unjust enrichment claim. The Court disagrees. With regard to their Commodities Exchange Act allegations, Plaintiffs have still failed to allege a sufficient nexus with a U.S. exchange or a U.S. financial transaction to justify a claim under *Morrison*. Plaintiffs have also not provided additional information that makes it any more plausible that they would succeed on their unjust enrichment claim. The Court finds that Plaintiffs' Amended Complaint once again fails to state a claim upon which relief can be granted. F.R.C.P. 12(b)(6).

    *a. Plaintiffs have still failed to prove that the CME Globex is an American exchange under Morrison*

As this Court noted in its first Opinion and Order, the fact that the CME constitutes a legitimate, registered exchange does not in itself render the CME Globex a certified exchange. Nothing in Plaintiffs' Amended Complaint has mitigated this Court's view of the substantive differences between the CME, a certified exchange, and the CME Globex, an electronic trading platform. While the CME continues to possess the hallmarks of a traditional exchange as defined by the Commodity Futures Trading Commission (CFTC), the CME Globex does not. The CME

4

Globex does not possess its own set of rules or a mechanism for enforcing them, nor is it structured in the same way as a traditional board of trade.

Even so, Plaintiffs allege two separate basis for their claim that the CME Globex constitutes an exchange under *Morrison*. They first argue that the CME Globex comports with the general definition of "exchange" used by the CFTC and various financial publications. (FAC ¶ 18). They also maintain that the CEA itself defines "exchange" as to encompass the CME Globex. *Id.* The Court is not persuaded by either of these claims. First, the CFTC maintains a public list of organizations it considers registered exchanges, and does not include CME Globex on that list.[1] Second, according to the CEA, a "registered entity" is a domestic U.S. contract market registered with the CFTC. 7 U.S.C. § 1a(40). As previously noted, the CME Globex is not registered with the CFTC as a domestic contract market. The fact that the CME Globex might, in Plaintiffs' opinion, comport with a dictionary or CFTC website definition of "exchange" is not enough. Absent formal registration with the CFTC, this Court still does not view the CME Globex as a registered exchange. Plaintiffs have thus not satisfied the first prong of *Morrison*.

Plaintiffs further contend that even if the CME Globex is not a registered exchange, it is still within the purview of the CEA by virtue of its being subject to CME enforcement rules. (Pls. Opp'n. at 14). Plaintiffs' Amended Complaint also fails to meet the pleading standard on this point. Although Plaintiffs note that § 9(a)(1) of the CEA prohibits commodity price manipulation both on any registered exchange and on any platform *subject to the rules* of a registered exchange, *Id.*, Plaintiffs fail to prove that the CME Globex is subject to CME Rules when the CME Globex is being used on an entirely different, foreign, exchange. Specifically, Plaintiffs have provided no

---

[1] *Trading Organizations—Designated Contract Markets (DCM)*, U.S. Commodity Futures Trading Commission, http://sirt.cftc.gov/SIRT/SIRT.aspx?Topic=TradingOrganizations&implicit=true&type=]DCM&CustomColumnDisplay=TTTTTTTT

5

evidence that the use of a matching engine with servers in the United States triggers CME regulation when the trades are otherwise being made on (and subject to the rules of) the KRX, and not the Chicago Mercantile Exchange.[2]

Plaintiffs counter that the CFTC, in various no-action letters, has at times subjected conduct on the CME Globex to the CEA. (Pls. Opp'n. at 17). Plaintiffs cite a letter dealing with KOSPI 200 futures specifically, in which the CFTC states that "[t]he offer and sale of this contract in the U.S. is, of course, subject to … the Commission's regulations." *Id.* (citing Def. Ex. A at 8). But Plaintiffs have also failed to prove a sufficient U.S. nexus on this point. The fact that certain *domestic* KOSPI 200 transactions might trigger the application of the CEA in no way establishes the CEA's extraterritorial reach with regard to CME Globex transactions on the KRX.[3] Absent any showing that that CME Globex trades on foreign exchanges are subject to the rules and regulations set forth by the CME, or the CEA more generally, the Court does not presume that foreign conduct on the CME Globex is subject to the same regulation as domestic conduct on the same trading platform. The *Morrison* presumption that "legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States" reigns. *Morrison*, 561 U.S. at 255.

---

[2] The Court is not persuaded by either party's argument on this point. The Defendants maintain that CME Rule 400 expressly limits the applicability of CME enforcement rules to the CME itself, but this mischaracterizes the CME's use of the word "Exchange" in Rule 400. *See.* Mot. to Dismiss at 11. Plaintiffs argue that CME rules "by their very terms" apply to all CME Globex trades. *See* Pls. Opp'n.at 15. However, Plaintiffs provide no textual or legal support for this contention.

[3] The Court takes judicial notice of various no-action letters submitted by Defendants in which the CFTC declined to extend U.S. regulation to foreign exchanges that used American trading platforms. *See* Def. Br. at 11-12. *See, e.g., San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos*, 75 F.3d 801, 808–09 (2d Cir.1996); *Int'l Audiotext Network, Inc. v. Am. Tel & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995); *Cortec Indus, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47–48 (2d Cir.1991). There is no dispute regarding the authenticity, accuracy, or relevance of these documents. *Cf. Faulkner v. Beer,* 463 F.3d 130, 134 (2d Cir.2006) (noting that consideration of materials outside the complaint is permissible on a 12(b)(6) motion if the documents are integral to the complaint, it is clear on the record that no dispute exists regarding the authenticity or accuracy of the document, and the relevance of the document is undisputed).

> b. *Plaintiffs have still failed to prove that the alleged illegal transactions occurred in the United States*

In their Amended Complaint Plaintiffs claim that "[i]rrevocable liability for KOSPI 200 [f]utures trades made on the CME Globex is incurred in Illinois when the trades are 'matched.'" (FAC ¶ 21). Plaintiffs include this evidence in response to this Court's earlier finding that the alleged illegal transactions were not sufficiently "made" in the United States, as necessary to satisfy the second prong of *Morrison*. Plaintiffs have still failed to satisfy *Morrison's* second prong.

Plaintiffs continue to rely solely on the "irrevocable liability" portion of Judge Katzmann's opinion in *Absolute Activist*; they now argue that under CME rules, CME Globex matches are "essentially binding contracts" for which irrevocable liability attaches. (Pls. Opp'n. at 5). However, once again, Plaintiffs too quickly assume that CME rules apply to the transactions at issue. It might well be the case that under CME rules, irrevocable liability occurs when trades are matched on the CME Globex. But the trades at issue took place on the KRX, not on the CME. And as Defendants continue to note, KRX rules suggest that irrevocable liability does *not* attach on the CME Globex platform. (Mot. to Dismiss at 17)[4]. In fact, the Court remains persuaded that under KRX rules, trades made on the CME Globex do not become binding until they are "settled" by the KRX on the following day, once the KRX has opened for regular trading. (FAC ¶ 22). Plaintiffs fail to provide any support for their claim that trades matched overnight on the CME Globex

---

[4] The Court also takes judicial notice of the KRX's description of the clearing and settlement process contained in footnote 10 of Defendant's Motion to Dismiss on the ground that it is integral to Defendants' claims and there is no dispute as to authenticity.

platform would be subject to the CME's interpretation of irrevocable liability, rather than that of the KRX.

The Court notes Defendants' argument that the Court need not even apply *Morrison's* irrevocable liability test to securities listed on a foreign exchange, notwithstanding contacts between the purchase and sale of those securities and the United States. (Mot. to Dismiss at 14). *See also City of Pontiac Policemen & Firemen's Retirement System* v. *UBS AG*, 752 F.3d 173 (2d Cir. 2014). It need not consider it. The Court again finds that under the irrevocable liability test outlined in *Absolute Activist Master Fund LTD v. Ficeto*, Plaintiffs fail to state a claim. Because Plaintiffs have failed to succeed on their initial claims, their control person liability claims are also dismissed. And because Plaintiffs have failed to adequately plead jurisdiction in their Amended Complaint, the Court also need not reach the merits of their CEA claims.

   c. *Plaintiffs have still not proven a direct relationship necessary to support their state law claims*

Plaintiffs also still fail to meet the pleading standard on their unjust enrichment claim. Although Plaintiffs provide new evidence alleging that it was a "mathematical certainty" that they dealt with Defendants directly, Pls. Opp'n. at 25, the Court once again finds that a high probability of direct dealing, absent substantive evidence of a direct relationship, cannot sustain an unjust enrichment claim. Courts in this Circuit have previously rejected unjust enrichment claims based on market manipulation when the "alleged relationship between plaintiffs and defendants [was] excessively attenuated." *In re Amaranth Nat'l Gas Commodities Litig.*, 587 F. Supp. 2d 513, 535 (S.D.N.Y. 2008) (Scheindlin, J.) (dismissing an unjust enrichment claim based on market manipulation where the "alleged link" between plaintiffs' trades and defendants' manipulations "is too attenuated"). Plaintiffs must have definitive evidence of a direct relationship.

The fact that Defendants traded approximately 53.8% of all KOSPI 200 Futures trades made on the CME Globex during the night market in 2012, coupled with the fact that Plaintiffs collectively made over 1,000 trades on the CME Globex in 2012, is not enough. (FAC ¶ 31). Plaintiffs have failed to prove that buyers and sellers were direct counterparties under KRX rules. Thus, Plaintiffs' unjust enrichment claim is also dismissed.

### III. CONCLUSION

None of the new allegations contained within Plaintiffs' Amended Complaint "nudge[s]" Plaintiffs' claims "across the line" into "plausible territory" as is required under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiffs' First Amended Complaint is dismissed with prejudice. This Order resolves Docket Entry 48.

SO ORDERED.

DATED: New York, New York
February 8, 2017

*Kimba M. Wood*
KIMBA M. WOOD
United States District Judge