UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

MYUN-UK CHOI, JIN-HO JUNG, SUNG-HUN
JUNG, SUNG-HEE LEE, and KYUNG SUB LEE,
Individually and on Behalf of All Others Similarly
Situated,

                         Plaintiffs,                                     14-CV-9912 (KMW)

                                                         **<u>OPINION AND ORDER</u>**

        v.

TOWER RESEARCH CAPITAL LLC and
MARK GORTON,

                          Defendants.
------------------------------------------------------------X

KIMBA M. WOOD, District Judge:

        Plaintiffs are members of a putative class comprised of parties who transacted in certain

Korea Exchange futures contracts in 2012.  Plaintiffs allege that Tower Research Capital LLC

("Tower") and its Chief Executive Officer, Mark Gorton (collectively, "Defendants"), used

fictitious trades and other deceptive techniques to manipulate the prices at which these futures

contracts traded on the Korea Exchange during overnight trading sessions using the Chicago

Mercantile Exchange's ("CME") Globex Platform ("Globex").

        Plaintiffs assert that this conduct violates the Commodity Exchange Act ("CEA"), 7

U.S.C. § 1, *et seq.*, and New York State's prohibition on unjust enrichment.  Defendants contend

that Plaintiffs cannot satisfy the CEA's threshold requirement that the trading at issue occurred

"on or subject to the rules of any registered entity."  7 U.S.C. § 9.  The Korea Exchange,

Defendants emphasize, is not a registered entity.  And the CME's regulatory authority, they

argue, does not reach futures contracts created by and traded on the Korea Exchange merely

because that trading is facilitated by Globex.

Defendants moved for judgment on the pleadings or, alternatively, summary judgment, on Plaintiffs' CEA claims.  (ECF No. 155.)  Magistrate Judge Gabriel Gorenstein issued a Report and Recommendation ("R&R"), recommending that the Court grant Defendants' motion for summary judgment.[1]  (ECF No. 203.)  For the reasons set forth below, the Court adopts the R&R and GRANTS Defendants' motion for summary judgment on Plaintiffs' CEA claims.

## I.      BACKGROUND

The facts and procedural history of this case have been recounted by this Court, the Second Circuit, and Judge Gorenstein in his recent R&R.[2]  Familiarity with these prior opinions is assumed.  Relevant background is briefly restated here.

The KOSPI 200 is an index for Korean stocks that trade on the Korea Exchange, South Korea's securities exchange operator.  In this way, the KOSPI 200 is akin to the S&P 500 or the Dow Jones.  (Second Amended Class Action Complaint ("SAC") ¶ 15, ECF No. 132.)   The Korea Exchange includes a KOSPI 200 futures contract in its daytime trading, which allows traders to speculate on the value of the KOSPI 200 index at various future dates. (SAC ¶ 17.)

To facilitate overnight trading of KOSPI 200 futures, the Korea Exchange contracted with the CME Group, Inc., a holding company that owns the CME, as well as the Chicago Board of Trade (CBOT), the New York Mercantile Exchange (NYMEX), and the Commodity Exchange (COMEX).  (SAC ¶ 18.)  Under the agreement between the Korea Exchange and the CME Group, futures contracts can be traded on Globex, an electronic platform located in Aurora,

---

[1] In his R&R, Judge Gorenstein considered material outside the pleadings, and for that reason treated the motion as one for summary judgment.  This Court does likewise here.

[2] *See Choi v. Tower Research Capital LLC*, 165 F. Supp. 3d 42, 45-46 (S.D.N.Y. 2016) ("*Choi I*") (dismissing complaint); *Choi v. Tower Research Capital LLC*, 232 F. Supp. 3d 337, 339-340 (S.D.N.Y. 2017) ("*Choi II*") (dismissing amended complaint); *Choi v. Tower Research Capital LLC*, 890 F.3d 60, 62-65 (2d Cir. 2018) ("*Choi III*") (vacating dismissal); *Choi v. Tower Research Capital LLC*, 2019 WL 6271324, at *1 (S.D.N.Y. Nov. 25, 2019) (affirming Magistrate Judge Gorenstein's discovery order); *Choi v. Tower Research Capital LLC*, 2019 WL 6871295, at *1-3 (S.D.N.Y. Dec. 17, 2019) (Gorenstein, M.J.) (R&R).

Illinois, from 5:00 p.m. to 6:00 a.m. Seoul time.  (SAC ¶ 18.)   Those who wish to trade in KOSPI 200 futures contracts during those hours submit orders on the Korea Exchange, and then trades are "matched" on Globex.  (SAC ¶ 21.)  Settlement of all trades occurs on the Korea Exchange the following day.  (SAC ¶ 22.)

Plaintiffs allege that Defendants "artificially and illegally manipulate[d] prices of the KOSPI 200 Futures during [overnight] trading . . . for their own profit."  (SAC ¶ 59.)  Tower traders allegedly entered large volume buy or sell orders on the Korea Exchange overnight futures market and then used the firm's high-frequency technology to immediately cancel their orders or ensure that they themselves were the counterparties on the trades.  (SAC ¶ 60.)  This created a false impression of supply and demand, driving market prices either up or down.  (SAC ¶ 63.)  Tower traders then sold contracts at the artificially inflated prices or bought contracts at the artificially deflated prices.  (SAC ¶ 61.)  In 2012, Plaintiffs allege, Tower traders used this "spoofing" practice to earn more than $14 million in illicit profits. (SAC ¶ 63.)  These trades represented approximately 53.8% of all KOSPI 200 futures trades using Globex's overnight trading mechanism in 2012.  (SAC ¶ 59.)

In December 2014, Plaintiffs filed a class action complaint on behalf of themselves and all others who transacted in KOSPI 200 futures contracts on the Korea Exchange overnight futures market in 2012 and were harmed by the Defendants' alleged spoofing scheme.  (ECF No. 1.)  Defendants moved to dismiss the complaint and this Court granted the motion, holding that Defendants' conduct fell outside the territorial reach of the CEA.  *Choi I*, 165 F. Supp 3d. at 50. In response, Plaintiffs amended their complaint; Defendants for a second time moved to dismiss the complaint, and this Court again granted Defendants' motion.  *Choi II*, 232 F. Supp. 3d at 340-342.  The Second Circuit reversed, determining that "Plaintiffs sufficiently alleged that

applying the CEA to Defendants' conduct would not be an extraterritorial application of the [CEA]." *Choi III*, 890 F.3d at 66.

Following remand, Defendants again moved to dismiss the complaint.  While that motion was pending, Judge Gorenstein held a discovery hearing and addressed "talk of additional facts" in Plaintiffs' submissions.  (Tr. of Discovery Hearing at 41, ECF No. 97.)  Rather than consider the pending motion with those facts outstanding, he directed Plaintiffs to move to amend the complaint.  (*Id.*)  Plaintiffs so moved and, over Defendants' opposition, Judge Gorenstein granted the motion to amend.

On August 1, 2019, Defendants filed a motion for judgment on the pleadings or for summary judgment.   (ECF No. 55.)  In his R&R, issued on December 17, 2019, Judge Gorenstein recommended that the motion be granted.  Plaintiffs timely objected to the R&R on January 14, 2020, (Pls. Obj., ECF No. 214), and Defendants responded on February 11, 2020, (Defs. Resp., ECF No. 221.)

## II.   LEGAL STANDARDS

### A.  Standard for Reviewing the Report and Recommendation

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  The district court reviews *de novo* any portion of the magistrate judge's recommendation to which a party objects, but reviews for clear error those portions of the recommendation to which no specific objection is made.  *Rivera v. Barnhart*, 423 F. Supp. 2d 271, 273 (S.D.N.Y. 2006) (Holwell, J.).  The district court also conducts clear-error review "when a party makes only conclusory or general objections, or simply reiterates his original arguments."  *Walker v. Vaughan*, 216 F. Supp. 2d 290, 292 (S.D.N.Y. 2002) (Berman, J.) (citation omitted).  "[N]ew arguments and factual

assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all." *Razzoli v. Fed. Bureau of Prisons*, No. 12-CV-3774, 2014 WL 2440771, at *5 (S.D.N.Y. May 30, 2014) (Preska, J.) (citation omitted).

### B.  Summary Judgment Standard

Summary judgment is appropriate where the moving party "shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether there exists a "genuine" dispute as to material fact, "a court must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). The burden of showing that "no [dispute as to any] material fact exists lies with the party seeking summary judgment." *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).  The summary judgment movant may satisfy that burden by pointing to the absence of evidence to support the nonmovant's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party has shouldered its burden, "[t]he opposing party must come forward with affidavits, depositions, or other sworn evidence as permitted by Fed. R. Civ. P. 56, setting forth specific facts showing there exists a genuine issue of material fact." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996).  The nonmoving party successfully demonstrates a genuine issue of material fact if the record is such that "a reasonable jury could return a verdict for the nonmoving party." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008)) (internal quotation marks omitted).

Where, as here, "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case." *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (internal quotation marks and citation omitted).  Therefore, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## III.   DISCUSSION

Under the CEA, it is unlawful to use or employ, or to attempt to use or employ, "any manipulative or deceptive device or contrivance" in connection with "any swap, or a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity."  7 U.S.C. § 9(1).  Likewise, it is "unlawful . . . to manipulate or attempt to manipulate the price of any swap, or of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity."  *Id.* § 9(3).

Thus, the CEA's anti-manipulation provision applies to the trading of futures contracts that occurs only "on or subject to the rules of any registered entity."  This premise is undisputed. (*See* Defendants' Memorandum in Support of Motion for Judgment on the Pleadings or Summary Judgment ("Defs. Mem.") at 1, ECF No. 156;  Plaintiffs' Memorandum in Opposition to Motion for Judgment on the Pleadings or Summary Judgment ("Pls. Mem.") at 17, ECF No. 168.)  The parties also agree that the KOSPI 200 future contracts at issue here were not traded *on* a registered entity during the night market sessions.  *Id.*  The sole question at this stage is

whether those KOSPI 200 futures contracts were traded "subject to the rules of any registered entity"—that is, subject to the rules of the CME.

As Judge Gorenstein noted, neither party has proposed a methodology for determining whether a product is traded "subject to" the rules of a particular registered entity.  (R&R at 12.) Nevertheless, Plaintiffs advance several arguments for why overnight trading of KOSPI 200 futures contracts using Globex is subject to the rules of the CME.  Each of those arguments fails. The Court addresses them in turn.

**A.  The CME Rulebook**

The CME has promulgated rules that govern transactions on Globex.  Although Plaintiffs place much stock in this fact, it is uninformative.  These CME rules demonstrate that the trading of CME contracts on the CME using Globex is subject to CME regulation.  They do not demonstrate that the trading of Korea Exchange contracts on the Korea Exchange using Globex is subject to CME regulation.  Indeed, with respect to futures contracts, the CME Rulebook applies to "Exchange futures" and defines "Exchange . . . exclusively as the 'Chicago Mercantile Exchange, Inc.'  (CME Rulebook Definitions (annexed as Ex. K to Levine I Decl.) at 10, ECF No. 157-11.)  In other words, the only futures the CME Rulebook governs are CME futures.

Moreover, as Judge Gorenstein explained, "the CME Rulebook lists hundreds of products that are subject to its rules" but "does not even mention KOSPI 200 futures or the Korea Exchange." (R&R 13.)  Given this silence, the CME Rulebook cannot apply to the trading of KOSPI 200 futures, because an exchange must, through its rules, "establish, monitor, and enforce" its authority over its futures contracts.  7 U.S.C. § 7(d)(2)(A).  No evidence suggests that the CME Rulebook aims to do so with respect to KOSPI 200 futures contracts.[3]

---

[3] Plaintiffs cite in their Objections to the R&R several specific rules that, they claim, support the inference that the CME's regulatory authority reaches KOSPI 200 futures.  Plaintiffs raise their arguments with respect to Rules 578,

### B.  The Globex Reference Guide

Plaintiffs rely on statements in the Globex Reference Guide to support their claim that trading facilitated by Globex is subject to the rules of the CME.  As an initial matter, the Globex Reference Guide is produced by CME Group—which is not a registered entity under the CEA. Thus, the fact that KOSPI 200 futures transactions using Globex may be subject to restrictions contained in the Globex Reference Guide does not establish that those transactions are subject to the rules of the CME or any other registered entity.

More specifically, the Globex Reference Guide summarizes common Globex rules, but "[f]or the text of actual rules or interpretations," it refers users "to the CME, CBOT or NYMEX Rulebooks."  (CME Globex Product Reference Guide ("Globex Reference Guide") (annexed as Ex. C to Levine I Decl.) at 20, ECF No. 157-3).  According to Plaintiffs, this statement implies that any and every Globex transaction is subject to the rules of one of those enumerated registered entities.  But the statement is better understood as a "disclaimer" (to borrow Plaintiffs' phrase, *see* Pls. Obj. at 8) that, where the guide references rules, it intends to direct users to the applicable rulebooks for each respective entity.  This disclaimer is useful because "several rules remain different [between exchanges] and market participants must be aware of these differences."  (Globex Reference Guide at 20.)  In other words, the disclaimer is further evidence

---

583.A, and 588.H for the first time in their Objections.  The Court, therefore, declines to consider these arguments. *See, e.g.*, *Nike, Inc. v. Wu,* 349 F. Supp. 3d 346, 353 (S.D.N.Y. 2018) (McMahon, C.J.) ("[C]ourts in this circuit generally do not entertain new legal arguments not presented to the magistrate judge.") (citation and quotation marks omitted).  With respect to other rules Plaintiffs reference in their Objections, including Rule 574, Plaintiffs reiterate the same arguments they presented in their Opposition to Defendants' Motion for Judgment on the Pleadings or Summary Judgment.  (*Compare* Pls. Obj. at 7-8 *with* Pls. Mem. at 9-10.);  *See Velez v. Duncan,* 489 F. Supp. 2d 317, 322 (S.D.N.Y. 2007) ("It is improper for an objecting party to . . . [submit] papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge.") (citation and quotation marks omitted).  The Court finds no clear error in Judge Gorenstein's analysis of the CME Rulebook, nor in his conclusion that there exists a "complete absence of evidence that CME or the CME Group had directed or even intended that the CME Rulebook govern the trading of KOSPI 200 futures." (R&R at 13.)

that trading of a product using Globex is exclusively subject to the rules of the exchange on which it is traded—CME contracts, for example, are subject to the rules of the CME, whereas KOSPI 200 contracts are subject to the rules of the Korea Exchange.

### C.  The Sniegowski Declaration

Plaintiffs fault Judge Gorenstein for failing to draw an inference in their favor from the declaration of Robert Sniegowski, the Executive Director for Rules and Outreach in the Market Regulation Department of CME Group.  (Declaration of Robert Sniegowski, dated July 11, 2019 (annexed as Ex. 2 to Levine II Decl.) ("Sniegowski Decl.") ¶ 1, ECF No. 158-2.)  When Defendants submitted this declaration in support of their motion for summary judgment, Plaintiffs urged Judge Gorenstein to give it little weight. (Pls. Mem. at  13 n. 8; Pls. Obj. at 15-16.).  In their Objections to the R&R, Plaintiffs take a different tack.

In the declaration, Sniegowski explains that, "[w]hile CME provides the technological platform and associated support for [KOSPI 200 futures] overnight trading . . . the trading itself remains governed by the [Korea Exchange] Rulebook."  (*Id.* ¶ 7.)  Thus, the Korea Exchange bears "all responsibility and must perform all regulatory obligations" for KOSPI 200 futures trading.  (*Id.* ¶ 9.)  Sniegowski further states that "the CME does not now, and has not ever, provided these regulatory functions for the [Korea Exchange] products traded on CME Globex." (*Id.*)

Plaintiffs claim that, while Sniegowski states that the Korea Exchange Rulebook applies to KOSPI 200 futures trading using Globex, he does not clearly deny that the CME Rulebook *also* applies to KOSPI 200 futures trading using Globex.  (Pls. Obj. at 15.)  But the Court declines to interpret a failure of perfect clarity as a veiled admission.  Instead, the Court

understands Sneigowski to mean what he comes within a hair's breadth of saying explicitly: that

the Korea Exchange regulates KOSPI 200 futures to the exclusion of CME regulation.

### D.  The CFTC Memorandum

Plaintiffs offer a 1989 memorandum in which the Commodity Futures Trading

Commission (CFTC) approved the CME's request to operate Globex as a futures trade matching

platform as evidence that the CEA governs trading of all futures contracts using Globex.  Like

the CME Rulebook and the Globex Reference Guide, the CFTC memorandum does little more

than confirm that CME contracts traded using Globex are subject to CME rules.

The memorandum's introduction defines its precise and limited scope.  "The CME . . .

has indicated that Globex could be used as a facility to trade contracts of other exchanges, both

domestic and foreign," the introduction states; "[t]he rules currently before the Commission,

however, relate solely to CME contracts."  (CFTC Memorandum Approving CME's Request to

Operate Globex (annexed as Ex. B to Eisenkraft Decl.) ("1989 CFTC Memo") at 2, ECF No.

169-2.)  Undeterred, Plaintiffs cite language from the memorandum that might help their cause—

for example, language stating that trading of futures contracts using Globex "would not alter in

any significant respect the ability of the [CME] to enforce its rules and of the [Commodity

Futures Trading] Commission to enforce the [Commodity Exchange] Act."—if that language did

not appear in a section of the memorandum titled "Regulation *of CME Contracts* Traded

Through Globex."  (*Id.* at 135) (emphasis added).  The memorandum lends Plaintiffs' position

no support.

### E.  The CFTC No-Action Letter

Plaintiffs' reliance on a 2008 CFTC No-Action letter is similarly flawed.  Plaintiffs claim

that the letter approved KOSPI 200 futures trading using Globex, and this approval is "yet

further evidence from which one could reasonably infer that KOSPI 200 trading is subject to the rules of a registered entity." (Pls. Obj. at 14.) The letter permits U.S. brokers to offer KOSPI 200 futures contracts to their U.S. customers as long as the brokers remain governed by certain CFTC regulations. (CFTC No-Action Letter (annexed as Ex. C to Eisenkraft Decl.), ECF No. 169-3.) In other words, as Plaintiffs' complaint describes, the letter's effect was that "U.S. registered futures commission merchants (FCMs) were permitted to, and did, accept orders for KOSPI 200 Futures from U.S. investors." (SAC ¶ 19.) The letter confirms that KOSPI 200 futures are traded on the Korea Exchange and regulated by Korean regulatory bodies. (CFTC No-Action Letter at 1-4.) The letter does not mention Globex. And it does not address whether trading using Globex is subject to the rules of a registered entity.

### F.  The CME Group Email

Plaintiffs point to a 2012 email from a CME Group official as purported proof that CME rules apply to KOSPI 200 futures trading using Globex. In that email, a CME Group official admonished Tower for "consuming [Korea Exchange] market data without the appropriate licensing in place to do so[]" and cautioned that the "CME Group and [the Korea Exchange] will continue to monitor for non-compliance." The email concerns the functions of the CME Group, not the CME. And it concerns the CME Group's role as a vendor for Korea Exchange market data, not as a regulator of futures contracts trading. The email is irrelevant to the issue before this Court.

### G.  The Effects of the Second Circuit's Decision in *Choi III*

Plaintiffs claim that Judge Gorenstein's R&R "effectively overrules the Second Circuit's decision" in *Choi III.* (Pls. Objs. At 21.) It does not. The Second Circuit's holding in *Choi III* concerned Defendants' extraterritoriality defense under *Morrison v. National Australia Bank*

*Ltd.*, 561 U.S. 247 (2010).  The panel held that it was "plausible" that Globex matching rendered Defendants' alleged spoofing practices "domestic transactions," such that the CEA's application to that conduct would not be impermissibly extraterritorial.  *Choi III*, 890 F.3d at 63.  As Judge Gorenstein concluded, it "simply ... did not address the issue of whether [KOSPI 200 futures] transactions were 'on or subject to' the rules of a registered entity, as required to state a [CEA violation under 7 U.S.C. § 9]."  (R&R at 18.)

### H.  Policy Implications

Plaintiffs assert that a ruling in Defendants' favor will lead to unfavorable policy outcomes.  "The CEA is a remedial statute that serves the crucial purpose of protecting the innocent individual investor—who may know little about the intricacies and complexities of the commodities market—from being misled or deceived."  *Choi III*, 890 F.3d at 63 (quoting *Loginovskaya v. Batratchenko*, 764 F.3d 266, 270 (2d Cir. 2014).  If KOSPI 200 trading using Globex were beyond the CEA's reach, Plaintiffs contend, the regulatory regime that protects investors from fraud would be compromised.  Of course, KOSPI 200 futures traders would remain protected by the rules of the Korea Exchange and the laws of South Korea.

Moreover, Congress limited the CEA's applicability to contracts traded on or subject to the rules of a registered entity, and it is the Court's "function to give the statute the effect its language suggests, however modest that may be; not to extend it to admirable purposes it might be used to achieve."  *Morrison*, 561 U.S. at 270.  That is not to say that any argument grounded in policy is irrelevant.  But the policy arguments here are not sufficient, without more, to render reasonable the inference that KOSPI 200 futures trading using Globex is subject to CME rules.

### I.  The Expert Report of Professor Greenberger

Finally, Plaintiffs argue that Judge Gorenstein erred in declining to consider the expert

report of Michael Greenberger, a professor at the University of Maryland Francis King Carey

School of Law.  (R&R at 8 n. 3; Expert Report of Michael Greenberger ("Greenberger Report")

(annexed as Ex. A to Eisenkraft Decl.), ECF No. 169-1.)  "To the extent Professor Greenberger's

statement presents factual matters," Judge Gorenstein determined, "it is clear that he has no

personal knowledge of any factual question in this case. The remainder of the statement gives

opinions on the legal questions presented on this motion."  (R&R at 8 n. 3.)  Judge Gorenstein's

decision to forego consideration of Greenberger's report was sound.  *See Hygh v. Jacobs*, 961

F.2d 359, 363 (2d Cir. 1992) ("This circuit is in accord with other circuits in requiring exclusion

of expert testimony that expresses a legal conclusion.").

The decision was also of little consequence, as Greenberger's report generally presents

the same legal arguments found in Plaintiffs' briefing regarding the CFTC Memorandum and

No-Action Letter, the holding of *Choi III*, and the policy implications of finding in Defendants'

favor.  On the CME rules themselves, Professor Greenberger offers scant input and, indeed,

concedes that "[n]o exchanges outside of the CME Group eligible for Globex trading are

specifically described as being governed by the CME Rulebook."  (Greenberger Report ¶ 20.)

Thus, even if it were proper for an expert report to provide legal opinions or conclusions—which

it is not—Professor Greenberger's report adds little value to Plaintiffs' case.

## IV.    CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion for summary judgment with respect to Plaintiffs' CEA claims.  The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 155.

SO ORDERED.

Dated: New York, New York
        March 30, 2020                                       _____/s/ Kimba M. Wood_____
                                                              KIMBA M. WOOD
                                                              United States District Judge